Milligan, J.,
delivered the opinion of the Court.
The questions submitted in this case arise on the following state of facts: Taliaferro, in his life time, on the 27th of January, 1860, executed to the complainant, Kinsey, his three several promissory notes, each for the sum of $2,000, due and payable respectively, on the 25th of December, 1860-1-2, with the defendant, D. V. Alexander, as his security, on each note. On the same day on which the notes were signed by Alexander, Taliaferro executed and delivered to him an instrument in writing, in which he recites the execution of said notes, and the fact that Alexander is his security thereon, and then proceeds: “In consideration whereof, I agree that said Alexander shall have a lien to hold himself as security aforesaid, on the tract of 438 acres, sold by him to me, and called the Thomas Place, a title bond to which I hold; and that he shall not be *394 bound to make a deed to the same until the aforesaid notes are fully discharged,- or satisfactorily arranged. Witness my hand and seal.
“John A. TaliaeerRo.”
In October thereafter, 1860, Alexander executed to Taliaferro a deed in fee, for the land, which was duly acknowledged and registered in the Register’s office of Gibson County.
In 1865, Taliaferro died intestate, and letters of administration were granted on his estate to the defendant, James A. McDearmon; who, in January, 1866, filed his bill against the heirs and creditors of the intestate, to wind up the estate under the insolvent laws. Subsequent investigations show the estate to be largely insolvent; and in «September following, the plaintiff in this proceeding, filed his petition or bill, in the nature of a cross-bill, praying to be made a party defendant to the original insolvent bill, and asking to be substituted to the rights of Alexander under the alleged mortgage executed by Taliaferro to Alexander, on the 488 acres of land sold by the former to the latter.
In this petition, it is ■ alleged that the three notes in controversy are unpaid to the petitioner, and that both Alexander’s and Taliaferro’s estates are insolvent; and that the execution of the deed from Alexander to Taliaferro was superinduced by the fraudulent representations of the latter.
There is no proof of actual fraud; and the whole case turns upon the effect to be given to the written instrument, called in the record a “mortgage.”
At the time of the execution of the mortgage, so- *395 called, tbe legal title to the land subsequently conveyed to Taliaferro, was in Alexander. And in such case, the vendor is presumed to have retained the title to secure the payment of the purchase money; and by the terms of the writing in question, on the day upon which Alexander signed the notes of Taliaferro as security, the liability of the former, by the agreement of the parties, was placed upon the same footing with reference to the land contracted to be conveyed, upon which the purchase money stood. Taliaferro held Alexander’s bond for title, and Alexander retained the legal title, both to secure himself in the payment of the purchase money, and to indemnify himself against loss on account of his suretyship upon the notes.
In this state of the case, under the principles of Green et al. vs. Demos et al., 10 Hum., 371, the parties stood to each other somewhat in the relation of mortgagor and mortgagee. The land was bound for the payment of the purchase money, and also to indemnify Alexander against loss, as the security of Tal-iaferro, on their notes, amounting in the aggregate, to $6,000. How effective the security thus taken might have been, had nothing been paid on the land contract, is not necessary now to be enquired into. It was, nevertheless a collateral security, given in trust by the principal debtor, for the benefit of his security on the notes executed to the complainant; and cel^eris par’KÜus, in a Court of Equity entered to his benefit.
The law is well settled, that an indemnity or collateral security, given by a debtor to his security, inures to the benefit of the creditor, who may file a bill to subject *396 it in equity -without first obtaining a judgment at law ; and it makes no difference whether the principal acted on the credit of such security or indemnity in the first instance, or not, or ever knew of its existence: Breedlove vs. Stump & Co., 3 Yer., 257-277; Moses vs. Murgatroyd, 1 John. Ch. R., 118-129; Phillips vs. Thompson, 2 Johns. Ch. R., 418; Shepherd vs. McEvers, 4 John. Ch. R., 135.
Under the doctrine of subrogation, a Court of Equity exercises paramount control for the purposes of justice and convenience, in respect to the relation of principal and sureties; and if property is pledged to either the principal or a surety, though not the person seeking to charge it, it may be reached by substitution, and the rights of the parties settled in one suit without the har-rassment of two: 1st Leading Cases in Equity, Hare and Wallace’s Notes, 163, 164.
But, admitting this doctrine, it is insisted that the subsequent execution of the deed by Alexander, waived all his rights under the so-called mortgage, and subjected the land to the general creditors.
Treating this case as a question between vendor and vendee merely, the execution of the deed, would materially change the relations of the parties, prior to the execution of the deed; as we have seen, relations analogous to those of mortgagor and mortgagee existed between them; but, after the conveyance, that relation ceased to exist altogether, or only existed, if at all, in the most remote and qualified form. The vendor after the conveyance, has no specific lien on the land for the purchase money, until a bill has been filed to enforce it. *397 He has nothing more than a mere equity, capable of acquiring the force and ef&cacy of a lien under certain circumstances, in the event of the non-payment of the purchase money. It is the creation of a Court of Equity, and rests upon the principle, “that a person having got the estate of another, shall not, as between them, keep it and not pay the consideration money Mackreth vs. Simmons, 15 Ves., 329.
But, when this equity of the vendor is fully recognized in a Court of Chancery, and will be sustained against the vendor, and all claiming through and in privity with him, and also against volunteers and purchasers with notice, it cannot prevail against creditors of the vendee, who have subsequently acquired a lien upon the estate, whether with or without notice, either by judgment, or in any other mode, before a bill has been filed by a vendor to assert his lien: Green vs. Demos, 10 Hum., 371.
But allowing the principle contended for to be correct, it is wholly inapplicable to the present case. The question presented, is not a question between vendor and vendee, nor is it a question involving the vendor’s lien. The exact nature and legal effect of the agreement between Alexander and Taliaferro, creating a lien on the land sold, seems not to be well defined in any book to which we have had access; yet, like a lien reserved by contract on the face of a deed of conveyance, it unquestionably, by agreement of the parties, created an additional and substantive lien in favor of the surety in the notes, on the land covenanted to be conveyed, differing from, and independant of, the ordinary vendor’s lien. *398 It is not equivalent in all respects, to a mortgage, because it does not assume to pass the legal title, or to inhibit the vendor from executing conveyance according to the terms of his bond for ti£le. True, the vendor-might, under the agreement, withhold the title until the notes upon which he was security, were fully paid, or otherwise satisfactorily arranged. The execution of the deed did not ipso facto, as between the vendor and vendee, defeat the lien created by contract upon the land; nor does it appear to have been intended to have that effect, as the contract creating the lien was retained, when the conveyance was executed and delivered. It follows therefore, by necessary logical deduction, both from the intendment of the parties, and the legal effect of the written instrument, or agreement of the parties, that it created a substantive and valid lien on the land, which was not removed, as between the parties to the agreement, by the executor of the deed, which a Court of Chancery would enforce: Lincoln vs. Percell, 2 Head, 143.
But the mutual contract, or agreement, creating the lien, is not registered; and, as a matter of law, the lien created by it in favor of the complainant after the execution of the deed, could not be held to prevail against the creditors of the vendee, who have subsequently acquired a lien upon the land, whether with or without notice, either by judgment or any other mode, before the complainant had, by bill, in a Court of Equity asserted his lien: 10 Hum., 371.
If we are correct in this view of the case, the only remaining inquiry is, as to the effect of the insolven *399 bill filed by the administrator of Taliaferro, against the heirs and creditors, to wind np and distribute the assets ratably among the creditors. This Court held, in the case of Fields, Ex’r, vs. The Creditors of Wheatley, 1 Sneed, 351, that “the statutes regulating the administration of insolvent estates, were not intended, and could not be construed, to affect, in the remotest degree, liens acquired in the lifetime of the deceased insolvent. They contemplate only a ratable division of the assets, which by law, are subject to the satisfaction of the general creditors.” And this opinion has been approved since the adoption of the Code, in the case of Winston, Adm’r, etc., vs. Eldridge. In this case, the learned Judge who delivered the opinion of the Court, says: “We have settled, in the case of 1 Sneed, 354, that the statutes regulating the distribution of insolvent estates, were not intended to affect liens upon any part of the property of the estate, acquired and fixed in the lifetime of the deceased. These rights continue as if there had been no death, and no statutes on the subject, so far as their priority of satisfaction is concerned. The property on which the lien exists, goes into the estate encumbered with the lien debts. Or, more correctly speaking, it is only what remains after the discharge of the incumbrance, that goes into the. fund for distribution.”
Under this rule of law, it results that a subsisting lien acquired and fixed in the lifetime of a deceased insolvent, which is capable of being enforced in a court of equity upon the application of the party in whose *400 favor it exists, may be asserted after tbe death of such insolvent; and it makes no difference how such lien was created, so it is a fixed, 'subsisting and valid charge upon the estate; or whether it might have been defeated by the superior diligence of other creditors.
In the present case, we have seen the lien was valid and subsisting between the parties creating it; and the record fails to show that the creditors, or any one of them, by their vigilance, have displaced it, or fixed upon the land on which it was created, a prior or superior lien. The land, or the proceeds thereof, still belong to the insolvent's estate; and the administrator’s bill cannot be held to give priority to any one of the creditors, or in any respect to interfere with the subsisting prior lien of' complainant. The complainant’s petition, filed in the nature of a cross-bill, properly asserts his right as a creditor, to the indemnity given by mutual agreement, by his principal debtor to his surety; and he may, in the absence of all prior or superior rights of intervening creditors, lawfully enforce it.
Confirm the decree of the Chancellor.